UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

OMAR JOHNSON,                          :
    Petitioner,                       :
                                      :
           v.                   :     No. 21-cv-4744
                                      :
MORRIS HOUSER; THE DISTRICT            :
ATTORNEY OF THE COUNTY OF              :
PHILADELPHIA; and THE ATTORNEY         :
GENERAL OF THE STATE OF                :
PENNSYLVANIA,                          :
    Respondents.                      :

_____

**O P I N I O N**
Report and Recommendation, ECF No. 46 - Adopted

**Joseph F. Leeson, Jr.**                                    **September 30, 2025**
**United States District Judge**

## I.   INTRODUCTION

On October 25, 2021, Omar Johnson filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2010 conviction in the Philadelphia County Court of Common Pleas for rape.[1]  *See* Habeas Pet. ECF No. 1.  Johnson alleged seven claims, including ineffective assistance of counsel for trial counsel's failure to object to the prosecutor's comments during her closing argument.  *See id.*  Magistrate Judge Pamela A. Carlos issued a Report and Recommendation ("R&R") on August 11, 2025, recommending the habeas corpus petition be denied and dismissed with prejudice.  *See* R&R, ECF No. 46.  Johnson filed objections to the R&R on September 9, 2025.  *See* Obj., ECF No. 47.  In his objections, Johnson

_____

[1]    A jury also convicted Johnson of involuntary deviate sexual intercourse, kidnapping, sexual assault, corruption of minors, violating the Uniform Firearms Act, and possession of instruments of a crime.  *See* ECF No. 1.

disagrees with the Magistrate Judge's conclusion that the Superior Court properly rejected his ineffectiveness claims regarding the prosecutor's comments during closing argument . *See id.* After de novo review, this Court agrees with the R&R, which is adopted in its entirety.

## II.    BACKGROUND

### A.  Procedural History

The R&R summarizes the factual and procedural background of this case. *See* R&R 1-5. Johnson does not object to this summary, and, after review, it is adopted and incorporated herein. The victims in this case shall be referred to as "J.W." and "C.B."

Johnson first challenged his conviction on direct appeal. *See* Appeal Oct. 22, 2010. He raised a sufficiency of the evidence claim and two claims of trial court error. *See id.* On November 29, 2011, the Pennsylvania Superior Court denied Johnson's appeal. *See Commw. v. Johnson*, 38 A.3d 932 (Pa. Super. Ct. 2011). The Pennsylvania Supreme Court denied Johnson's petition for allowance of appeal on April 25, 2012. *See Commw. v. Johnson*, 44 A.3d 1161 (Pa. 2012).

Johnson also filed a petition under Pennsylvania's Post-Conviction Relief Act ("PCRA") on August 28, 2012. *See* PCRA Pet. Johnson claimed his trial counsel was ineffective for failing to object during the prosecutor's closing arguments, and he broached additional claims, including requesting a witness testify. *See id.* After two amended PCRA petitions, the PCRA court dismissed Johnson's petition on April 26, 2019. *See Commw v. Johnson*, Nos. CP-51-CR-0013628-2007 and CP-51-CR-00013632-2007, No. 1614 EDA 2019 & No. 1617 EDA 2019 (Phila. Cnty. Ct. Com. Pleas filed Dec. 3, 2019).

Johnson appealed the denial of his PCRA petition to the Superior Court, which affirmed the PCRA court on December 21, 2010. *See Commw. v. Johnson*, No. 1614 EDA 2019 & No.

1617 EDA 2019, 2020 WL 7496028 (Pa. Super. Ct. Dec. 21, 2020).  The Pennsylvania Supreme

Court denied Johnson's petition for allowance of appeal of his PCRA claim.  *See generally*

*Commw. v. Johnson*, 257 A.3d 700 (Pa. 2021).

Johnson filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the

above-captioned action on October 25, 2011.  The case was thereafter assigned to a Magistrate

Judge for an R&R and briefs were ordered.  After the matter was fully briefed, Magistrate Judge

Pamela A. Carlos issued an R&R on August 11, 2025, recommending the habeas corpus petition

be denied and dismissed with prejudice.  Johnson has since filed objections to the R&R.[2]

### B.  Factual Background

As previously mentioned, in the absence of any objection to the factual background in the

R&R, it is adopted and incorporated herein.  In sum,[3] J.W. testified at trial that when she was

thirteen years old, she was walking home from school and a man grabbed her hip and put a gun

to her side, threatening to shoot her if she screamed.  He pulled her into an abandoned building

and forcibly had vaginal sex, then left.  C.B. testified that when she was sixteen years old, she

was waiting at a bus stop when a man approached her in his car and offered her a ride, which she

declined.  The man got out, held a gun to her back, and forced her into his car, which had no

door handle inside thereby preventing her escape.  After driving fifteen blocks, he pulled over

and demanded oral sex.  He also forced vaginal sex on her, then told her to get out of the car.

---

[2]    This case was stayed pursuant to the Standing Order dated August 19, 2025, because the
Pennsylvania Attorney General's Office, which experienced a cyberattack, is a party.  This stay
was extended until October 2, 2025.  *See* Standing Order dated September 17, 2025.  The August
19 Standing Order permits any presiding Judge to lift the stay prior to its expiration for
"extenuating circumstances."  This Court finds such extenuating circumstances present in the
above-captioned action because the case is almost four years old.  Moreover, because habeas
relief is being denied and because no further action is required of the Attorney General's Office,
lifting the stay two days early will not prejudice the Respondent.

[3]    *See* R&R 1-3

Both victims reported the rapes immediately and had rape kits performed.  Three years later, Johnson's DNA was entered into the national database and matched the DNA collected from both victims.  Johnson testified at trial that the encounters were consensual and that both minor victims offered to pay him in exchange for sex.

In his habeas corpus petition, Johnson brings an ineffective assistance of counsel claim for his trial counsel not objecting to the prosecutor's comments during her February 25, 2010 closing argument.  Such comments include:

1.      "And then, callously and cold, [Johnson] gets out of the car, opens up the door—she can't even pull her pants up—and she's tossed out into the dirt lot.  What happened to those girls was cold.  And we know it happened."  Trial Tr. 25:25, 26:1-5, Feb. 25, 2010.

2.      "Your common sense tells you that when somebody sticks a gun to your head, your back, your stomach, threatens to shoot you, your common sense tells you that in that situation, do you need to kick somebody?  Do you need to punch them in order to get them to do what you want them to do?  Do you have to put a knife—in addition to a gun, [to] have a 13-year-old submit to sexual assault?" and "A gun is enough.  The threat on your life is enough. The feeling that I will never get married, that I will never have kids, that my life will be over if I don't submit to sex is enough.  The law contemplates that.  And that's why the only people you need to hear from are [the victims]."  *Id.* at 27:15-21.

3.      "I couldn't help but clutch my stomach just a little bit as I watched him put his hands as if it were on [C.B.'s] head and stroke her hair and stroke her butt and talk about how good her head game was.  He enjoyed that.  It wasn't just about the sex.  It was about the gun, and the violence, and about taking something.  He enjoyed every moment."  *Id.* at 25-31.

4.      "And the reason he remembers these two contacts, as opposed to any contact he's ever had in his life, is because it was a little different.  He took these girls at gunpoint, and he enjoyed it." *Id.* at 25-31.

5.      "He brought to life the fact that he knew—that he thought that [J.W.] was this young, little girl on the street when I showed that picture of her one month after.  Couldn't help but get a little sick when you realized that he, too, thought that she looked like she was 5 or 6 years old, that girl that he wants you to believe was a woman, a prostitute on the street on Kensington Avenue." *Id.* at 25-31.

6.      "Your common sense tells you that there aren't lockers on Kensington Avenue where a 13-year-old girl can put her backpack in and then go work the street. It's sick." *Id.* at 25-31.

7.      "And maybe he's convinced himself that these girls wanted it, that these two girls on the street were looking for him; they were looking for sex.  But you know that [J.W.] and [C.B.] never wanted this to happen.  They didn't want to be taken off the street.  They didn't want a gun to their bodies.  They didn't want to have to think about this over and over again for the rest of their lives.  They didn't want to have to come into this courtroom, in front of people they don't know, and testify about something brutal and terrible that happened to them six years later.  They didn't want to live every single day, from the time that had happened until the time that they got his DNA, not knowing who it was that pulled them off the streets." *Id.* at 25-31.

## III.    LEGAL STANDARDS

### A.    Report and Recommendation – Review of Applicable Law

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to

which specific objections are made.  *See Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process").  "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)."  *Hill v. Barnacle*, 655 F. App'x. 142, 147 (3d Cir. 2016) (holding that even when objections are filed, district courts "are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)").  The district "court may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C).

When neither party objects to a magistrate judge's report and recommendation, the district court is not statutorily required to review the report, under de novo or any other standard. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 152 (1985).  Nevertheless, the United States Court of Appeals for the Third Circuit has held that it is better practice to afford some level of review to dispositive legal issues raised by the report.  *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987), *writ denied* 484 U.S. 837 (1987).  "When no objections are filed, the district court need only review the record for plain error or manifest injustice."  *Harper v. Sullivan*, No. 89-4272, 1991 U.S. Dist. LEXIS 2168, at *2 n.3 (E.D. Pa. Feb. 22, 1991); *Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998) (explaining that in the absence of a timely objection, the court should review the magistrate judge's report and recommendation for clear error).

B.        **Habeas Corpus Petitions, 28 U.S.C. § 2254—Review of Applicable Law**

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking federal habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Where a petitioner has failed to properly present his claims in the state court and no longer has an available state remedy, he has procedurally defaulted those claims. *See id.* at 847-48. An unexhausted or procedurally defaulted claim cannot provide the basis for federal habeas relief unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 732-33, 750 (1991) (explaining that a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion [because] there are no state remedies any longer 'available' to him"). The Supreme Court has held that the ineffectiveness of counsel on collateral review may constitute "cause" to excuse a petitioner's default. *See Martinez v. Ryan*, 566 U.S. 1 (2012). The fundamental miscarriage of justice exception "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562

U.S. 594, 598 (2011) (internal quotations omitted); *See also* 28 U.S.C. § 2254(d);[4] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (holding that there is a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard" because the question before a federal court is not whether the state court's determination was correct, but whether the determination was unreasonable); *Hunterson v. Disabato*, 308 F.3d 236, 245 (3d Cir. 2002) ("[I]f permissible inferences could be drawn either way, the state court decision must stand, as its determination of the facts would not be unreasonable."). Additionally, "a federal habeas court must afford a state court's factual findings a presumption of correctness and that [] presumption applies to the factual determinations of state trial and appellate courts." *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir. 2008). The habeas petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Where the state court reviewed and rejected a habeas claim, the petitioner must establish that the state court's rejection of the claim was "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

---

[4]    "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . .; or . . . resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d).

C.    **Ineffective Assistance of Counsel--Review of Applicable Law**

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness;[5] and (2) the performance was prejudicial to the defense.[6]  *See Strickland v. Washington*, 466 U.S. 668 (1984).  There is a strong presumption that counsel is effective, and the courts must be "highly deferential" to counsel's reasonable strategic decisions.  *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002).  The mere existence of alternative, even more preferable or more effective, strategies does not satisfy the first element of the *Strickland* test.  *Id.* at 86.  To establish prejudice under the second element, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000) (quoting *Strickland*, 466 U.S. at 694).  "Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.  The court must consider the totality of the evidence and the burden is on the petitioner.  *See id.* at 687, 695.

When considering ineffective assistance of counsel claims under § 2254, the question before a federal court is not whether the state court's determination was correct, but whether the determination was unreasonable.  *Knowles*, 556 U.S. at 123.  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a

---

[5]     *Strickland*'s first element demands proof that "counsel made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

[6]     The prejudice element requires the habeas petitioner to prove "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.* at 687.  Merely "show[ing] that the errors had some conceivable effect on the outcome of the proceeding" is not enough.  *Id.* at 693.  A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

defendant has not satisfied that standard." *Id.* (describing "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard").

The Pennsylvania standard for ineffective assistance of counsel matches the federal standard. *See Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 391 (3d Cir. 2020).

### D.    Prosecutorial Comments

To overturn a conviction or sentence for improper prosecutorial comments in a closing argument, the petitioner must demonstrate prejudice sufficient to show the comments deprived him of a fair trial or violated the reliability of sentencing. *Henry v. Horn*, 218 F. Supp. 2d 671, 704 (E.D. Pa. 2002). "[A] prosecutor's arguments to the jury are not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict." *Id.* at 705. "[T]he reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). The district court, viewing a prosecutor's closing statements in the context of the proceeding, must determine if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller,* 483 U.S. 756, 765 (1987) (holding that the remarks must be "sufficiently prejudicial" in the context of the entire trial to violate a defendant's due process rights (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974))). To offend due process, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976))). *See also Ramseur v. Beyer*,

983 F.2d 1215, 1239 (3d Cir. 1992).  Courts must draw a "fine line" to "distinguish between ordinary trial error and that sort of egregious misconduct which amounts to a denial of constitutional due process." *Ramseur*, 983 F.2d at 1239 (3d Cir. 1992) (quoting *United States ex rel. Perry v. Mulligan*, 544 F.2d 674, 678 (3d Cir. 1976)).   The United States Supreme Court has held, "habeas relief is not available simply because the prosecutor's remarks were undesirable or even universally condemned." *See Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (internal quotations omitted).

## IV.    ANALYSIS

This Court adopts the Magistrate Judge's well-reasoned R&R.  The Superior Court's decision—that Johnson's trial counsel did not provide ineffective assistance by failing to object to the prosecutor's remarks during her closing argument—was not contrary to Federal law, nor based on an unreasonable determination of the facts of the case.[7]

### A.  Johnson' objections regarding the prosecutor's characterization of Johnson's acts as "callous" and "cold"

The R&R concluded that the Superior Court's ruling regarding the prosecutor's characterization of Johnson's actions as "callous" and "cold" was consistent with  Federal law. R&R 14.  The R&R determined that the Superior Court correctly held the prosecutor used permissible "oratorical flair" in her closing arguments and that such comments were not

---

[7]    Johnson introduced six other ineffective assistance of counsel claims in his habeas petition, but did not broach the same claims in his PCRA appeal.  Likewise, Jackson does not broach these claims in his objections, nor refute the R&R finding that they are procedurally defaulted.  *See generally* Obj.  On this Court's review for plain error, it agrees with the Magistrate Judge's conclusion that Johnson procedurally defaulted on the other six claims.  For the reasons set forth in the R&R, the remaining habeas claims are procedurally defaulted.  This Court adopts the reasoning of the R&R with regards to the merits of these claims such that they are not substantial so as to excuse procedural default, and dismisses these claims.

objectionable.  *Id.*[8]  The R&R concluded the prosecutor's comments "were a permissible

reaction to the evidence at trial and a rebuttal of [] Johnson's theory of the case."  *Id.*  Since

Johnson could not demonstrate prosecutorial misconduct, he could not demonstrate his trial

counsel was ineffective.  The Superior Court's decision was not based on an unreasonable

application of *Strickland*.  *See id.* at 15.  Moreover, the R&R concluded the Superior Court,

which "primarily relied on its interpretation of the prosecutor's closing arguments," did not reject

Johnson's claim based on an unreasonable determination of the facts.  *Id.*

      In his objections, Johnson contends the prosecutor's characterization of his actions as

"callous[] and cold" "can only be considered as arguments that were calculated to inflame the

passions and prejudice[] the jury."  Obj. at 3-4.  Johnson argues that this Court should "examine

the improper remarks in their entirety and consider them in the context of the complete trial."  *Id.*

at 3.

      Considering the context of the entire trial, as did the state courts and the Magistrate

Judge, this Court agrees with the R&R that the prosecutor's comments were oratorical flair based

on the evidence, and did not violate Johnson's due process rights.  *See Henry v. Horn*, 218 F.

Supp. 2d 671, 704-05 (E.D. Pa. 2002) (Federal courts reviewing habeas cases decided under

Pennsylvania law permit "oratorical flair" in a prosecutor's closing argument.). The prosecutor

used the word "cold" to establish her theme of the case.  She stated the case had been a cold case,

referred to Johnson's acts as "cold," and referenced the snowy day of the trial.  Trial Tr. 25:25,

---

[8]     The Superior Court held "[c]lassifying Appellant's actions as 'callous and cold'
correlated to the Commonwealth's theory of the case, that he knowingly acted without the
victims' consent and left them in precarious situations."  *Johnson*, 2020 WL 7496028, at *6.
"Appellant's defense in this case was that the sexual acts of which he was accused, committed
against a thirteen-year-old and a sixteen-year-old, were both consensual."  *Id.*  "Thus, the
prosecutor's statement in this regard was permissible oratorical flair that summarized the trial
evidence and rebutted Appellant's defense."  *Id.*

26:1-5, Feb. 25, 2010.  The prosecutor also used the phrase "callous" based on the victims'

description of the rapes, including victim C.B.'s testimony that Johnson made her get out of the

car and sit in a dirt lot with her pants down.  *See* Trial Tr. 70-72, Feb. 24, 2010.  The prosecutor

had wide latitude in her closing argument to discuss her theme of the case and summarize the

lengthy, often-emotional testimony during the trial.[9]  *See United States v. Werme*, 939 F.2d 108,

117 (3d Cir. 1991) ("[A] prosecutor is entitled to considerable latitude in summation to argue the

evidence and any reasonable inferences that can be drawn from that evidence." (citing *United*

*States v. Scarfo,* 685 F.2d 842, 849 (3d Cir. 1982))).

    This Court agrees with the R&R that the Superior Court's rejection of Johnson's

ineffectiveness claim was not contrary to federal law, nor based on an unreasonable

determination of the facts, given the victims' lengthy testimony about their encounters.  Thus,

Johnson's objection is without merit and overruled.

## B. Johnson's objection to the prosecutor's invocation of the "unexpressed thoughts" of the victims and of Johnson

    The R&R found that the Superior Court correctly held the prosecutor used "oratorical

flair" in her closing arguments and such remarks were not objectionable.  R&R at 14.  The R&R

also agreed with the state courts that the prosecutor's comments were legitimate inferences from

the evidence.  *See id.* at 13.  The R&R concluded that because there was no prosecutorial

misconduct, Johnson's ineffective assistance of counsel claim failed.  *See id.* at 15.  Thus, the

R&R found the Superior Court's decision was not contrary to Federal law, nor based on an

unreasonable determination of the facts.  *See id.*

---

[9]    The Superior Court held "[c]lassifying Appellant's actions as "callous and cold"
correlated to the Commonwealth's theory of the case, that he knowingly acted without the
victims' consent and left them in precarious situations."  *Johnson*, 2020 WL 7496028, at \*6.  The
statement was thus "permissible oratorical flair that summarized the trial evidence and rebutted
[Johnson]'s defense."  *Id.*

Johnson objects to the R&R's conclusion that the prosecutor's statements about the victim's unexpressed thoughts were legitimate inferences from the evidence. *See* Obj. at 5. He maintains that the prosecutor's statements about the victims' unexpressed thoughts "appealed to the jury's passions and prejudices." *Id.* Johnson alleges that the prosecutor misstated the evidence because there was "no evidence to support her improper closing statements." *Id.* Johnson also objects to the R&R's conclusion that the prosecutor's statement about Johnson enjoying the violence of raping the victims was not prosecutorial misconduct. *See id.* at 6. Johnson argues the R&R provided an unreasonable conclusion "because[] the prosecutor could not have made such prejudicial remarks without prejudicing [Johnson]." *Id.*

After de novo review, this Court agrees with the R&R that the prosecutor's comments regarding both the victims' and Johnson's thoughts were reasonable inferences from the testimony. The record[10] shows that both victims testified they felt "scared" during the incidents.[11] Both victims testified that because they felt scared, they relented to Johnson's

---

[10]      In his objections to the R&R, Johnson suggests that an evidentiary hearing is needed to determine whether the statements prejudiced him. *See* Obj. at 3-4. However, a "hearing is necessary only where the record does not resolve factual allegations. . . ." *United States v. Jackson*, 2006 U.S. Dist. LEXIS 83163, *18-19 (E.D. Pa. 2006) (concluding that a hearing was not required because the petitioner pointed to no evidence outside of the record that had a bearing upon his claims), *citing Machibroda v. United States*, 368 U.S. 487, 494-95 (1962); *United States v. Campisi*, 583 F.2d 692, 695 (3d Cir. 1978). Because this Court has reviewed the trial transcripts in the record, an evidentiary hearing is unnecessary.

[11]      One victim, C.B. testified during redirect examination that she did not scream or fight back because "[w]hen you're in a situation, you don't think. And I was just scared. I didn't know what to do. I've never been through this before, so…" Trial Tr. 61:1-25, 62:1-7, 67:1-24, 90:15, 98:6-8, Feb. 24, 2010. The other victim, J.W., stated she was scared when Johnson put a gun to her side and was scared to even put her pants back on after the encounter because she did not know "what would happen if [she] got up." Trial Tr. 68:4-20, 74:18-25, 75:1-8, Feb. 23, 2010. J.W.'s mother testified J.W. was so emotional about the encounter that "she couldn't stop vomiting for the first like two, three days," and "was hardly eating," and "was afraid to be left alone." Trial Tr. 33:4-24, Feb. 24, 2010. Likewise, C.B.'s mother testified her daughter "was extremely upset" following the encounter. Trial Tr. 108:20, Feb. 24, 2010.

demands.[12]

This Court also agrees with the R&R that the prosecutor's suggestion that Johnson enjoyed the encounters was a reasonable inference from his testimony.[13] The prosecutor extrapolated from Johnson's testimony that he enjoyed his encounters. *See id.* Johnson testified in graphic detail about the encounters, particularly about oral sex with C.B., implying she was "going to be good."[14]

Because the prosecutor's comments did not constitute misconduct, this Court agrees with the R&R that the Superior Court's decision was not contrary to *Strickland*. *See Werts v. Vaughn*, 228 F.3d 178, 204, 205 (3d Cir. 2000) (holding that prosecutors may make "legitimate inferences" from the testimony, and the Third Circuit has upheld such precedent in accordance with *Strickland*.); *Werme*, 939 F.2d at 117. The evidence discussed herein shows that the Superior Court also did not base its decision on an unreasonable determination of the facts.

While Johnson states in his objection that "there was no evidence to support the improper closing statements," the record shows plentiful evidence that the victims testified they were

---

[12]    "Therefore, the prosecutor's remarks in this regard arose in the context of the victims' expression of fear that Appellant would shoot them if they did not comply with his demands and represented a legitimate inference from their testimony." *Johnson*, 2020 WL 7496028, at *6.

[13]    "The prosecutor's remarks that Appellant enjoyed the violence associated with raping the victims at gunpoint recounted, albeit in dramatic fashion, Appellant's testimony that he liked his encounter with C.B. and did not rise to the level of prosecutorial misconduct." *Johnson*, 2020 WL 7496028, at *6.

[14]    Johnson testified as follows:

Next thing you know, we started kissing. Do you know what I mean? So I lean back. I was like, "Damn, let me see what your head game is like." Then [C.B.] put her knees in the passenger's seat. Do you know what I mean? She went down on me. I was playing with her hair. Do you know what I mean? I'm playing with her butt, like rubbing her butt and everything. And she sucked me off – do you know what I mean? – playing with her hair. I'm just playing with her hair. So I was like "Damn, you're going to be good."

Trial Tr. 193:14-25, Feb. 24, 2010.

frightened.  The record likewise shows Johnson testified about the sexual encounters with the victims fondly, making the prosecutor's comments legitimate inferences from the testimony.

Regarding Johnson's objection that "the prosecutor could not have made such prejudicial remarks without prejudicing" him, he simply disagrees with the decisions against him.  Johnson points to no evidence of prejudice beyond what he believes is prejudice.  The entirety of the evidence, combined with Johnson's lack of specificity, does not demonstrate Johnson faced prejudice from the prosecutor's comments.  Moreover, arguably all evidence of a criminal defendant's guilt is prejudicial.  The existence of prejudice, alone, is not sufficient to warrant relief if the prosecutor's remarks were proper, as they were here.  Johnson's objections are without merit and overruled.

### C. Johnson's objections to the prosecutor's "couldn't help but clutch [her] stomach" and "It's sick" comments

The R&R concluded that the prosecutor's remarks about how Johnson's testimony made her "sick" were "ill-advised" but not necessarily improper and, also, not prejudicial.[15]  R&R at 14.  The R&R acknowledged prosecutors should not "vouch for the credibility of a witness based on their 'personal knowledge or other information not contained in the record."  *Id.* at 13 n.11.  However, the Magistrate Judge explained that the "Supreme Court has found much more objectionable comments to be permissible."  *See id.* at 14 (citing *Darden,* 477 U.S. 168).[16]  The R&R, "for substantially the same reasons provided by the state courts," concluded that the

---

[15]    The Superior Court rejected Johnson' claim, stating the prosecutor's statements were not a personal belief as to "the truth or falsity of the testimony or evidence or the guilt of the defendant," and were not improper opinions on the truth of the testimony or Johnson's guilt. *Johnson*, 2020 WL 7496028, at *7.

[16]    In *Darden*, the Court concluded that although the prosecutor's statements were improper, they did not so infect the trial with unfairness as to make the resulting conviction a denial of due process.  *Darden*, 477 U.S. at 180 and n.12 (denying habeas relief where the prosecutor twice referred to the defendant as an "animal" and stated that he "wish[ed he] could see [the defendant] with no face, blown away by a shotgun")).

Superior Court correctly determined that even if the comments were improper, they "did not rise to the level of a constitutional violation." *Id.*  The R&R explained the trial judge repeatedly instructed the jury that the prosecutor's arguments were not evidence. *Id.* at 15.  The R&R concluded "the totality of the evidence weighed heavily against Johnson." *Id.* at 15.  The R&R likewise concluded Johnson failed to demonstrate his counsel's performance was deficient or prejudicial, and the Superior Court's decision was not contrary to Federal law. *See id.* at 15. The R&R also determined the Superior Court "relied on its interpretation of the prosecutor's closing arguments," and Johnson did not "rebut its determination of the facts." *Id.*

In his objections, Johnson argues that because the Magistrate Judge acknowledged that the prosecutor's comments were ill-advised, they were "clearly considered to be 'contrary to' clearly established federal law." *Id.* at 2.  As such, Johnson alleges "these prejudicial comments could not be repaired, not even if a curative instruction had been offered." *Id.* at 3.  Johnson asserts the prosecutor's comments "inflamed the passion and prejudiced the jury." *Id.* at 5. Johnson maintains that this Court was not obligated to presume the Superior Court decided his case correctly. *Id.* at 4.[17]  Johnson contends the Superior Court "brushed aside" the prosecutor's comments and maintains the comments demonstrated the prosecutor's personal beliefs and opinions. *Id.* at 6.  Finally, Johnson alleges his counsel was ineffective for neither objecting, nor requesting a curative instruction or mistrial. *See id.* at 7.

---

[17]    Johnson contends that the Magistrate Judge relied on "an alleged Presumption of Correctness" of the Superior Court, and "[s]imply because there may be some case law suggestive of a State court's ability to adjudicate some cases properly, coherently and without violating a defendant's Constitutionally guaranteed rights is in no way determinative of State court[]s 'always' issuing issues comporting with the Constitution." *Id.* at 4.  Johnson maintains that he could question a state court's finding of fact in a federal court regarding whether the state court made "an unreasonable determination of the facts." *Id.*

Following de novo review, this Court agrees with the R&R and the state courts that the prosecutor's comments, even if improper, did not prejudice Johnson.[18]  The prosecutor's comments that Johnson's actions were "sick" related to Johnson's testimony about having oral sex with victim C.B. where he said she was "going to be good."  *See* Trial Tr. 193:14-25, Feb. 24, 2010.  Such comments did express the prosecutor's personal opinion "as to the truth or falsity of any testimony or evidence or the guilt of the defendant."  *See United States v. Zehrbach*, 47 F.3d 1252, 1265 n.11 (3d Cir. 1995) (quoting Standard 3-5.8(b) of the American Bar Association Standards for Criminal Justice)).  Regardless, they did not so infect the trial with unfairness as to make Johnson's conviction a denial of due process.  *See Darden*, 477 U.S. at 180 and n.12.  The comments followed four days of trial, where the jury heard from eleven witnesses, including the two victims, a witness who identified Johnson's DNA in the victims' rape kit samples, and Johnson, who suggested that these minor victims consented to sex in exchange for money.  *See* Trial Tr. 146:18-23, 147:5-20, Feb. 24, 2010.  The prosecutor summarized these four days of testimony in her closing argument and included only the few allegedly objectionable comments discussed herein.[19]  In the context of the entire trial and given the weight of the evidence against Johnson, the prosecutor's comments, which the trial judge instructed the jury were not evidence, *see* Trial Tr. 44:6-19, Feb. 25, 2010, did not violate Johnson's due process rights by prejudicing

---

[18]      The Superior Court held that although "[i]t is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant, . . . the prosecutor's statements were not opinions on the truth of the testimony or Appellant's guilt. Rather, they described the prosecutor's reactions to Appellant's testimony and demeanor."  *Johnson*, 2020 WL 7496028, at *6 (internal quotations and citations omitted).  Regardless, "even if the remarks were an improper expression of the prosecutor's personal opinion, . . . [n]othing in the record indicates that these statements" prejudiced the jury "so they could not weigh the evidence objectively and render a true verdict."  *Id.* (citations omitted).

[19]      The prosecutor's closing argument consumed sixteen pages of the trial transcript, with the comments at issue taking only a few lines of transcript.

the jury.  This Court finds the Superior Court's decision was not contrary to *Strickland*, nor based on an unreasonable determination of the facts.

Johnson's contention in his objections that if the prosecutor's statements were ill advised, as the Magistrate Judge found, they were contrary to federal law is without merit as he misunderstands the applicable legal standard.  His objections regarding prejudice are nothing more than his disagreement with the decisions against him.  In response to Johnson's objection that the state court "bushed aside" this issue, this Court finds the Superior Court did not "brush[] aside" the prosecutor's comments about feeling sick.  The Superior Court identified these comments as a separate claim of trial counsel ineffectiveness, reviewed the comments, and explicitly held:

> . . . we observe that the prosecutor's statements were not opinions on the truth of the testimony or Appellant's guilt. . . . [E]ven if the remarks were an improper expression of the prosecutor's personal opinion, "they cannot be characterized as prosecutorial misconduct unless their effect was to 'prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict.'"

*Johnson*, 2020 WL 7496028, at *7 (quoting *Commonwealth v. Chmiel*, 889 A.2d 501, 509 (Pa. 2005).  Finally,  Johnson's contention that the Magistrate Judge erroneously relied on a presumption of correctness of the Superior Court's decision is meritless as the R&R applied the correct legal standard.  *See Fahy*, 516 F.3d at 181 (holding that "a federal habeas court must afford a state court's factual findings a presumption of correctness and that [] presumption applies to the factual determinations of state trial and appellate courts").  Additionally, contrary to Johnson's suggestion that the state courts' decision are always determinative, the Magistrate Judge conducted an independent review of the evidence in Johnson's case.  Johnson's objections to the prosecutor's comments about feeling "sick" are meritless.  This Court overrules his objections.

V.    **CONCLUSION**

After applying de novo review, this Court adopts the Magistrate Judge's R&R. Johnson's objections to the R&R are overruled.  This Court adopts the recommendation to dismiss six claims of the habeas petition based on procedural default and to deny the one exhausted claim of ineffective assistance of counsel for lack of merit.  The Superior Court's rejection of this claim was not based on an unreasonable determination of the facts or contrary to federal law.  For the reasons stated herein and in the R&R, there is no basis for the issuance of a certificate of appealability.[20]

A separate Order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[20]    "Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'"  *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)).  "Where a district court has rejected the constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*